GARY A. BORNSTEIN (*pro hac vice* forthcoming)
gbornstein@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel.: +1 212 474 1000

ROBERT D. CARROLL (*pro hac vice* forthcoming)
*RCarroll@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000

ISHIKA DESAI (SBN 340239)
*IDesai@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street
San Francisco, CA 94105
Tel.: +1 415 733 6316

Attorneys for Plaintiff
BRAVE SOFTWARE, INC.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BRAVE SOFTWARE, INC., | Case No. |
| Plaintiff, | **BRAVE SOFTWARE, INC.'S COMPLAINT FOR DECLARATORY JUDGMENT OF (1) NO COPYRIGHT INFRINGEMENT, (2) COPYRIGHT MISUSE, AND (3) NO BREACH OF CONTRACT** |
| v. | |
| NEWS CORPORATION d/b/a NEWS CORP, DOW JONES & CO., INC., NYP HOLDINGS, INC., NEWS CORP UK & IRELAND LIMITED, and NEWS PTY LIMITED d/b/a NEWS CORP AUSTRALIA, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiff Brave Software, Inc. ("Brave") brings this action for declaratory judgment of no copyright infringement, copyright misuse, and no breach of contract against Defendants News Corporation d/b/a News Corp ("News Corp"), Dow Jones & Co., Inc. ("Dow Jones"), NYP Holdings, Inc. ("NYP Holdings"), News Corp UK & Ireland Limited ("News Corp UK"), and News Pty Limited d/b/a News Corp Australia ("News Corp Australia") (collectively, "Defendants").[1]

**PRELIMINARY STATEMENT**

1. This case concerns Defendants' efforts to misuse their copyrights to impose a tax on the basic tools that have enabled search engines to function for decades—and then expand that tax to cover newer iterations of that technology, such as the tools that provide search results for use by artificial intelligence ("AI") large language models ("LLMs"). Defendants' theories, if accepted, would fundamentally disrupt basic search functionality and materially impede the dissemination of knowledge and ideas through emerging technologies. In response to Defendants' threats, Brave filed this lawsuit to establish that any use its transformative technologies make of Defendants' content is fair use protected by the law.

2. Brave is by far the smallest of the three U.S.-based companies that operate independent search engines (with the other two being Google and Microsoft). Brave distinguishes itself from the competition by, among other things, prioritizing user privacy. Brave makes its search results available to users through Brave Search and makes its search results available to enterprise customers including generative AI ("GenAI") companies through its Search API. Brave's GenAI customers use Brave's search results to supplement output from their LLMs to provide users with better and richer answers to their inquiries, such as more recent or more locally relevant information. Brave thus plays a role in powering a technology that a court in this District recently referred to as "among the most transformative many of us will see in our lifetimes."[2]

---

[1] This lawsuit is related to *Brave Software, Inc. v. News Corp.*, No. 25-cv-02503 (N.D. Cal.), which was filed on March 12, 2025. On June 9, 2025, the parties stipulated to dismiss that suit without prejudice to attempt to resolve their differences. The parties' dispute has not been resolved, prompting Brave to file this lawsuit.

[2] *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1033 (N.D. Cal. 2025).

3. Defendants are a related set of global publishing companies that are seeking to establish a new revenue stream off the back of technology they had no hand in inventing or operating. Specifically, Defendants demand payment for the indexing of their content to make it searchable, which has long been recognized as fair use. And they reach even further to demand payment for the provision of search results—not to users—but to LLMs who then use those results as one input in providing responses to user queries.

4. Courts in this District have already twice rejected similar efforts by a copyright holder to control how LLMs use content on the back end to create new, non-infringing content.[3] As one of those courts recently explained, "this market is not one that the [Defendants] are legally entitled to monopolize."[4]

**<u>INTRODUCTION</u>**

5. Defendants have targeted Brave's core, traditional search engine product, alleging that the most basic function of a search engine—indexing publicly available content to make it searchable—is copyright infringement. Defendants also allege that Brave infringes by providing other basic search engine features like (a) the snippets of text that appear under a link to enable a user to understand what will be available if the link is clicked, and (b) high-level summaries of the indexed content, comparable to the Google Gemini output that often appears at the top of a Google search result page.

6. Defendants' arguments, if credited, would dramatically change what search engines can do. They would also materially impede the development of any new search engine, thereby restricting the search business—and ultimately consumer choice—to only the largest incumbent search engines, Google Search and Microsoft's Bing.

7. Defendants' approach would also disrupt the growing GenAI industry, where search plays a key role. Most LLMs use what is called Retrieval Augmented Generation ("RAG"), through which the "retrieval" of search results "augments" the outputs "generated" by the model.

---

[3] *See generally id.*; *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025).
[4] *Kadrey*, 788 F. Supp. 3d at 1052.

BRAVE'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, COPYRIGHT MISUSE, AND NO BREACH OF CONTRACT                                         CASE NO.

Put more plainly, LLMs use real-time search to fetch relevant up-to-date information to supplement the knowledge base from which they generate answers to user queries. RAG significantly improves LLM response accuracy and relevance, reduces "hallucinations" (inaccurate information), and allows for greater control and transparency by grounding answers in specific, verifiable data, making AI more trustworthy and useful for complex, real-world applications.

8. Defendants have attempted to assert their copyrights to prevent Brave from including their content in the search results provided to GenAI companies through Brave's Search API. But just as search engines have for many years been displaying search results to individual users, it is fair use to provide search results to GenAI companies through an API. Indeed, in the case of a search API, search results are provided only to the LLM, not to the public.

9. Defendants' efforts to interfere with Brave's Search API would be particularly problematic. Because search engine functionality is necessary to support search APIs, the only U.S. companies that can offer such APIs are the three with search engines: Google, Microsoft, and Brave. Brave therefore plays a critical role in democratizing and improving competition within the GenAI space because Brave's Search API increases the likelihood that third parties will succeed, thereby mitigating the risk that the industry will be dominated by existing tech giants with dominant search engines.

## NATURE OF THE ACTION

10. This is an action under the Copyright Act, 17 U.S.C. § 101 *et seq.*, the common law, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that seeks declaratory judgments of no copyright infringement, copyright misuse, and no breach of contract.

## THE PARTIES

11. Plaintiff Brave is a Delaware corporation with a principal place of business in San Francisco, California.

12. On information and belief, Defendant News Corp is a Delaware corporation with a principal place of business in New York, New York.

BRAVE'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, COPYRIGHT MISUSE, AND NO BREACH OF CONTRACT                                          CASE NO.

13. On information and belief, Defendant Dow Jones is a Delaware corporation with a principal place of business in New York, New York. Dow Jones is a wholly owned subsidiary of News Corp.

14. On information and belief, Defendant NYP Holdings is a Delaware corporation with a principal place of business in New York, New York. NYP Holdings is a wholly owned subsidiary of News Corp.

15. On information and belief, Defendant News Corp UK is a British company with a principal place of business in London, United Kingdom. News Corp UK is a wholly owned subsidiary of News Corp.

16. On information and belief, News Corp Australia is an Australian company with a principal place of business in Sydney, Australia. News Corp Australia is a wholly owned subsidiary of News Corp.

17. Counsel for the Defendants sent a letter alleging infringement by Brave on behalf of each of the foregoing News Corp affiliates, naming each individually in the letter.

### JURISDICTION AND VENUE

18. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and supplemental jurisdiction over Brave's breach of contract declaratory judgment claim pursuant to 28 U.S.C. § 1367. The Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, authorizes the declaratory and further relief requested in this action.

19. This Court has declaratory judgment jurisdiction over this action because Defendants sent a cease-and-desist letter, dated February 27, 2025, to Brave in this District accusing Brave of copyright infringement and breach of contract and demanding "compensation for all past unauthorized use and sale by Brave of News Corp's copyrighted content." The letter also included a series of unduly burdensome requests for information designed to ascertain an amount of "compensation" to demand.

20. Following receipt of Defendants' letter, Brave, without conceding any liability, undertook a good-faith, proactive effort in this District to address Defendants' concerns (however

4

misplaced) and reach a mutually acceptable resolution. Despite Brave's efforts, Defendants continue to assert that Brave is liable for copyright infringement and breach of contract and to demand payment, creating an imminent threat to Brave.

21. This Court has personal jurisdiction over domestic Defendants News Corp, Dow Jones, and NYP Holdings because they purposefully targeted this District by sending the February 27, 2025 letter to Brave's CEO at Brave's San Francisco headquarters and demanding that Brave change conduct developed, managed, and implemented from this District. Further, on information and belief, those Defendants conduct continuous business in California, including the creation and/or publication of the copyrighted works at issue, and those contacts relate to Defendants' efforts to enforce copyrights and website terms against Brave's California-based operations. Beyond this, Defendants have various offices and employees based in California, which is the second largest market for its popular publication the *New York Post*. For example, Dow Jones has an office at 1 Post Street in San Francisco. News Corp also recently announced the launch of the *California Post*, which will focus on California news and target the California market.

22. A substantial portion of the events giving rise to the lawsuit occurred within this District, including Brave's management of the technology that Defendants contend infringes their intellectual property and Defendants' sending a demand letter to Brave in this District that accuses Brave of infringing Defendants' intellectual property rights in this District.

23. Defendants News Corp UK and News Corp Australia are subject to personal jurisdiction under Fed. R. Civ. P. 4(k)(2) because Brave's claims arise under federal copyright law, those foreign Defendants are not known to be subject to jurisdiction in any single state's courts of general jurisdiction, and they have sufficient United States contacts to make jurisdiction reasonable, including U.S.-directed publication and subscription contacts, as well as their participation in the February 27, 2025 letter.

24. Venue is proper in this judicial District under 28 U.S.C. § 1400(a). Venue is also proper in this judicial District for all claims under 28 U.S.C. §§ 1391(b)(2) and 1391(b)(3).

BRAVE'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, COPYRIGHT MISUSE, AND NO BREACH OF CONTRACT                                                                    CASE NO.

## FACTUAL BACKGROUND

### A. Brave's Disruptive Search Engine

25. Brave is one of three American companies to build search engine technology at scale. The other two are Google and Microsoft—two giants, each valued at over $3 trillion (more than many countries). Other search engines, like DuckDuckGo and Yahoo, are ostensibly competitors but they actually "syndicate their search results from Bing."[5] In other words, Brave is the only true search engine alternative to Google and Microsoft in the United States.[6]

26. Brave has gained a foothold in the search engine space and begun to take some of Google's and Microsoft's share because it offers a revolutionary product: a search engine that provides lightning-fast, accurate responses without compromising user privacy. Brave does not sell, share, or even collect its users' personal data. This significantly differentiates Brave from other search engines, which have been repeatedly criticized for their invasive privacy policies.[7] Many users appreciate Brave's unique approach to their privacy concerns, which has led to Brave's growth.

### 1. Search Indexing

27. To offer a search engine, Brave, like any other search engine, needs to index the internet. Search engine indexing is the process where a search engine browses the web, discovers and analyzes website content, and then indexes or collects content and information to store in a

---

[5] *United States v. Google LLC*, 747 F. Supp. 3d 1, 38 (D.D.C. 2024).

[6] *See id.* at 37-38.

[7] *See, e.g.*, Imran Rahman-Jones, *Critics Say New Google Rules Put Profits Over Privacy*, BBC (Feb. 15, 2025), https://www.bbc.com/news/articles/cm21g0052dno (calling Google's new rules on user tracking and IP address collection, referred to as fingerprinting, "a blow to privacy because it is harder for users to control what data is collected about them"); Paul Monckton, *Your Google Search History Could Soon Be Accessed By Google's Gemini AI*, Forbes (Mar. 10, 2025), https://www.forbes.com/sites/paulmonckton/2025/03/10/googles-gemini-ai-could-soon-gain-full-access-to-your-search-history (describing an "experimental [Google] Gemini Personalization model" that would allow Google's LLM to access and respond based on users' search histories, and explaining that "[t]he privacy concerns should here should be obvious" because "[o]ur search histories say a lot about us, and automated tools, especially powerful AI-based ones, significantly increase the ease with which this most personal information can be exploited").

central database (called an index) so that the search engine can retrieve and display relevant pages in search results when a user queries for information. These functions are what allow search engines to organize and categorize web pages to make them easily searchable, creating the search engines users are familiar with today.

28. Brave accesses and indexes publicly available webpages, which enables Brave to return links to these pages in response to a search, along with a limited "snippet" of text from a page that is directly relevant to a user query.

29. Brave accesses and indexes only content that a provider has made available to all internet users. For example, Brave never accesses or indexes content that a provider places behind a paywall or for which a provider requires login credentials.

30. Brave's search results do not provide users with the full content or full text of any third-party webpage.

### 2. Search Snippets

31. As previewed above, Brave offers "snippets" in its search results. Snippets are short, query-responsive excerpts of third-party content.

32. Snippet content is generated from the Brave Search index, as well as through an AI model that analyzes pages and extracts the snippet of text most relevant to the user's query. Brave's use of "snippets" in its search results is fair use and is similar to the snippets offered by other search engines, like Google and Bing, as part of their search engine results.[8]

### 3. Search Summaries

33. Where appropriate, Brave's search results also contain short, summarized answers to user queries, like other search engines do. Brave's summaries are written by an AI-powered

---

[8] *See More Options to Help Websites Preview Their Content on Google Search*, Google Search Central (Sept. 24, 2019), https://developers.google.com/search/blog/2019/09/more-controls-on-search ("Google uses content previews, including text snippets and other media, to help people decide whether a result is relevant to their query."); Barry Schwartz, *Bing Search Result Snippets That Are Scrollable*, Search Engine Roundtable (Sept. 18, 2024), https://www.seroundtable.com/bing-scrollable-search-result-snippets-38071.html.

feature that summarizes third-party content in the form of a natural language response to a user's question.

34. Summaries provide richer information in a preview format at the top of search results pages. The specific content displayed in a summary is a preview of the content on the third-party webpage(s) determined to be most relevant to the user's search engine query, which helps users identify webpages they may want to visit and, in turn, drives traffic to third-party webpages.

35. Brave's summaries are accompanied by citations to sources that were drawn on and links to those websites.

36. In the annotated screenshot of a Brave Search result page below, a Brave Search summary is shown in the blue box and a snippet is shown in the green box:



37. All search engines "crawl," index, show snippets, and summarize; these functions are core to the modern search engine.

38. Nonetheless, Defendants allege these functions constitute infringement of the many copyright-protected articles (each an individual "work") that Defendants make publicly available on their websites.

39. Defendants also allege that this conduct, which is necessary for Brave to maintain core search engine functionality, violates their websites' terms of service, which prohibit "scraping," a process by which data can be extracted from webpages.

**B.      Brave Search API**

40. Defendants have also targeted Brave Search API, thereby threatening to disrupt the development of a competitive market for GenAI, a nascent technology many consider to be the most important innovation so far this century.

41. Brave offers search APIs, which can be used with third-party LLMs. LLMs are a subcategory of GenAI models that have been designed to process and understand natural language inputs (also known as prompts), and to predict and generate responsive text like a human. LLMs are trained to understand language patterns, semantics, and context surrounding a given prompt, and then employ probabilistic techniques to determine the specific word, phrase, or sequence of phrases that are likely to occur in response to a given prompt.

42. LLMs often support chatbots or other computer programs that simulate human conversations with users. Users provide a text input to a chatbot, which guides the LLM's response generation process by laying out the context for the LLM to understand the user's desired response. Once an LLM receives an input, it relies on its training to provide responses to the user.

43. In response to user queries, an LLM "infers" an answer based on data. But the data in any given LLM is necessarily limited because LLMs are not trained continuously with updated information. Instead, there is a cut-off date to the data set on which each LLM is trained. Thus, to answer user queries, the LLM may need to supplement its training with information drawn from the internet.

44. That is where RAG comes in. RAG enhances the LLM's output by enabling the LLM to pull information from new and additional data sources, combine the information with the LLM's existing training set, and generate a more informed and useful response. RAG leverages search APIs to retrieve relevant and new knowledge bases or data sources to augment the LLM's existing training.

45. On information and belief, Google and Microsoft use search APIs from their two dominant search engines to power their respective LLMs in this manner.[9]

46. Brave offers its search APIs to third-party GenAI companies for use with their LLMs. Brave's search APIs allow the LLMs to step into the shoes of a Brave search engine user to leverage Brave's search technology at the time of "inference"—the moment the LLM "infers" an answer to the user's query based on data—and get search results, like a human search engine user would. Like a human search engine user, an LLM using Brave's search APIs can access search results, which will direct the LLM to third-party webpages and parts of those webpages most relevant to the query, as well as metadata.

47. LLMs use the real-time Brave search results they receive through Brave's search APIs to engage in RAG. The RAG-powered responses include links to third-party webpages and snippets from those webpages, allowing the LLM to provide accurate, up-to-date responses to user queries—independent of Google and Microsoft.

48. Third parties have successfully used Brave's Search APIs to help their LLMs become viable alternatives to those offered by Big Tech giants.

**C. Defendants' Threats and Demands**

49. Notwithstanding the established lawfulness of indexing and providing search results, snippets and summaries based on publicly available content, Defendants have threatened to sue Brave for these activities. On February 27, 2025, each of the Defendants, through counsel, sent Brave a letter at its headquarters in this District, attached as **Exhibit A**, directed to Brave's CEO. The letter threatened litigation and alleged that Brave infringed Defendants' copyrights and

---

[9] *Grounding with Google Search*, Gemini API, https://ai.google.dev/gemini-api/docs/google-search ("Grounding with Google Search connects the Gemini model to real-time web content and works with all available languages. This allows Gemini to provide more accurate answers and cite verifiable sources beyond its knowledge cutoff."); *Data, Privacy, and Security for Web Search*, Microsoft Copilot Studio (Feb. 1, 2026), https://learn.microsoft.com/en-us/microsoft-copilot-studio/data-privacy-security-web-search ("Copilot Studio agents access the web via Bing APIs . . . .").

breached Defendants' terms of service by accessing publicly available websites and using Defendants' content in Brave's search functionality.

50. Defendants specifically alleged that Brave is "unauthorizedly and unlawfully misappropriating News Corp's copyrighted content" in Brave Search and via the Brave Search API.

51. Defendants complained that Brave indexes publicly accessible internet content to operate a search engine, alleging that "Brave scrapes News Corp websites without identifying itself and without authorization" to create Brave's "search index." Defendants then alleged that it is illegal for Brave to "include[] the scraped copyrighted News Corp content into [*sic*] a search index that Brave licenses and sells to third parties via its Search API, in competition with News Corp's own licensing and other monetization opportunities."

52. Defendants also complained about Brave's paraphrased summaries, writing that "Brave's Summarizer provides 'comprehensive answer[s]' related to 'real-time information that is up to date with today's events'" that "include significant portions of News Corp content and are deliberately designed to siphon away traffic (along with attendant advertising, subscription and licensing revenues) from News Corp's news publications."

53. Finally, Defendants complained about Brave's snippets, which are provided as previews to search engine users and to customers of Brave Search API who operate LLMs. Defendants specifically alleged that Brave, via its Brave Search API offering, provides "'extra alternate snippets' that are comprised of verbatim sentences and paragraphs of news articles, totaling hundreds of words." According to Defendants, the amount of their content that is provided to Brave Search API customers through the snippets is an "unlawful reproduction[]" and "commercial substitute for News Corp's original works." Defendants further complained that "Brave has no legal right to scrape News Corp's content for the purpose of selling that content to others."

54. Based on the foregoing, Defendants alleged that Brave has engaged in copyright infringement, including because Brave has made "unlawful reproductions that are a commercial

substitute for News Corp's original works," and that Brave has "violat[ed] News Corp's terms of service."

55. Defendants' letter demanded that Brave cease and desist from accessing Defendants' publicly available websites and "demand[ed] compensation for all past unauthorized use and sale by Brave of News Corp's copyrighted content."

56. In the same letter containing these accusations, Defendants referenced a case they filed against a third party, Perplexity AI, Inc., in which Defendants allege infringement of many registered copyrights and seek statutory damages.

57. Defendants' threats were accompanied by onerous and invasive demands for information (much of which was unmoored from Defendants' complaints) that Defendants would ostensibly use to "assess the potential harm" for which they would demand to be paid:

   a) "The list of AI firms that obtained News Corp's content through Brave's Search API and, separately, Brave's Summarizer";

   b) "The user agent(s) and IP addresses for all crawlers that Brave uses upon News Corp websites";

   c) "Any policies or technical specifications that limit the amount of web content that Brave packages into 'alternate snippets'";

   d) "The commercial terms on which Brave provides its customers with access to News Corp websites via Brave's Search API, including guardrails set for creating derivative content, if any"; and

   e) "The total number of individuals to which Brave has provided access to 'Summaries' that incorporate text from News Corp's articles."

58. Defendants' letter directed Brave to agree to their demands by no later than 14 days from receipt.

59. Brave denies that any conduct Defendants complained of amounts to either copyright infringement or breach of contract.

### 1. Fair Use

60. Based on decades of legal precedent and practice, Brave's product-specific uses are fair use permitted under 17 U.S.C. § 107. Among other things, Brave's use of Defendants' alleged copyright-protected works is transformative: it enables the development of a search engine, as well as search APIs that are critical to GenAI technology. Traditional indexing and search snippets transform public webpages into a searchable location-and-ranking function—a quintessentially transformative purpose. Brave Search's summaries generate new, natural-language responses with inline citations and hyperlinks to sources; they do not republish News Corp's expressive content. And Brave's search APIs provide retrieval and grounding services for third-party applications, which serves a distinct purpose from the original journalistic purpose of News Corp's articles.

61. Defendants do not provide any of these services or exploit their works in these ways. They do not undertake the massive effort that Brave does to index the web and then identify third-party content that is relevant to user queries. Nor do they, or can they, offer search APIs that allow LLMs the ability to step into the shoes of a search engine user to rapidly deploy searches necessary to provide accurate, up-to-date responses to user queries at the point of inference. While Defendants do license their content to GenAI companies to train LLM models, that is not at issue here; Defendants have not alleged (and could not allege) that Brave uses News Corp content for that purpose.[10]

62. The remaining fair use factors also favor Brave. Most of Defendants' works are factual news reporting. Further, snippets represent just a small percentage of the works, and Brave Search's summaries produce short, paraphrased responses rather than reproductions of articles. Lastly, Defendants themselves benefit from Brave's maintenance of a search engine—as noted above, Brave attributes the sources of third-party content, including from Defendants' websites, which may promote user traffic to Defendants' websites and articles.

---

[10] In any event, *Bartz* and *Kadrey* recently found training an LLM to be fair use.

14

### 2. No Breach of Contract

63. Defendants also have no viable breach of contract claim against Brave as a matter of law.

64. Defendants' breach of contract allegations are preempted by the federal Copyright Act and those allegations otherwise fail because Brave did not agree to any browse-wrap or click-wrap contracts.

### 3. Copyright Misuse

65. Nearly 30 years ago, in 1998, Congress enacted the Digital Millennium Copyright Act, which provided a safe harbor from copyright infringement liability for search engine providers because Congress recognized that "the [i]nternet . . . made it possible for information—including valuable American copyrighted works—to flow around the globe in a matter of hours," and, as a consequence, copyright law needed to be "set . . . up to meet the promise and the challenge of the digital world."[11]

66. Defendants' threats and demands that Brave cease lawful conduct necessary to operate a search engine, if allowed to stand by the Court, would threaten the continued operation of search engines and deprive the public of the many benefits of search engines that Congress recognized nearly 30 years ago. At minimum, Defendants' threats and demands would make the search market prohibitively expensive to enter, effectively reserving the space exclusively for Google and Microsoft.

67. By threatening the foundations of search technology, Defendants also threaten the next frontier, GenAI, which relies on search for RAG.

68. Defendants' threats undermine copyright's fair use principles and are improper.

69. Defendants are sophisticated parties that know all this. But they nonetheless have made unwarranted demands of Brave, apparently hoping that the threat of potentially ruinous statutory damages would force Brave to submit to unwarranted payment demands for the right to

---

[11] 144 Cong. Rec. S11,889 (daily ed. Oct. 8, 1998) (statement of Sen. Orrin Hatch).

15

interact with website content that includes not only copyright-protected expression but also material not protected by copyright. Attempting to leverage limited copyright rights against non-protectable materials in this manner is copyright misuse.

**D.      Brave Reacts to Defendants' Threats and Demands**

70.      On March 12, 2025, after receiving Defendants' demand letter, Brave filed a declaratory judgment action, seeking declarations that it had not infringed Defendants' copyrights or breached any contract with Defendants. Brave also sought a declaration that Defendants engaged in copyright misuse. That case was *Brave Software, Inc. v. News Corp.*, No. 25-cv-02503 (N.D. Cal.).

71.      Brave simultaneously, and without conceding any liability, reached out to Defendants in an effort to resolve the parties' dispute amicably. In connection with that exchange, Brave proactively undertook steps in this District to address Defendants' concerns. Brave, as part of a good-faith effort to advance a potential resolution to this dispute, communicated to Defendants the steps it had taken to address Defendants' concerns.

72.      Following this, Brave and Defendants exchanged various communications in which the parties discussed their respective concerns and attempted to work out a solution.

73.      The parties' negotiations continued to the point that they agreed to file a joint stipulation of voluntary dismissal of the case in June 2025 to give themselves time to attempt to resolve their differences.

74.      Despite those efforts, the parties have not yet resolved their disputes, and Defendants continue to assert that Brave's conduct constitutes copyright infringement and breach of contract.

75.      Brave filed this lawsuit to vindicate its rights, end Defendants' unfounded efforts to expand the scope of their copyrights and seek unwarranted payments, and prevent Defendants from upending essential technological developments and the law on fair use.

16

# FIRST CLAIM FOR RELIEF

## (Declaratory Judgment of Non-Infringement)

76. Brave repeats and realleges each and every allegation set forth above.

77. Defendants assert that Brave's browsing, indexing, and extraction of limited data from Defendants' websites (which Defendants characterize as "crawling" and "scraping") infringes Defendants' alleged copyright rights when used to index the webpages and operate a search engine, summarize content, and create snippets of content, as described above. Defendants also assert that providing RAG-essential search APIs is infringement.

78. Defendants have accused Brave of infringement in a letter threatening litigation, demanding that Brave cease the conduct at issue and pay Defendants compensation for alleged past infringement, and demanding, among other things, that Brave provide Defendants with information Defendants would rely upon to demand a payment amount for Brave's past use of Defendants' works.

79. Brave's actions are not infringement because each challenged use is protected fair use under 17 U.S.C. § 107, including because Brave uses Defendants' alleged copyright-protected works—the content on Defendants' publicly available websites—in transformative ways that enable Brave to offer a search engine platform to individuals and search APIs to LLMs, which are services that Defendants do not provide.

80. In addition, Defendants' February 27, 2025 letter specifically demanded information about third-party AI firms that obtain content through Brave Search API and about Brave's policies limiting snippets and guardrails for derivative content—allegations that, taken together, suggest Defendants may also contend that Brave is secondarily liable for third-party use of Brave Search API outputs. To the extent Defendants assert or may assert such a theory, Brave denies that any third-party API customer has directly infringed Defendants' copyrights through use of Brave Search API. Brave has not induced any infringement and has not designed Brave Search API to be used for infringement. Brave Search API has substantial non-infringing uses, including enabling real-time search retrieval, factual grounding, citation-bearing responses, and query-relevant

17

information location for third-party applications. This alternative theory is pleaded solely because Defendants' letter raised it; it does not expand the factual predicate for this action beyond the conduct threatened or challenged in the February 27, 2025 letter.

81. An actual, present, and justiciable controversy exists between Brave and Defendants concerning Brave's operation of the specifically identified products above using Defendants' publicly available website content—namely whether Brave has infringed any copyright-protected works, and whether any future operation of those products as described above would infringe those works. The controversy also includes Defendants' demand for compensation for past alleged infringement.

82. To the extent Defendants contend that Brave is secondarily liable for third-party use of Brave Search API outputs as suggested by Defendants' February 27, 2025 letter, that theory is also in controversy.

83. Brave seeks a declaratory judgment that its use of Defendants' publicly available website content in the specifically identified products and functions described above does not infringe Defendants' copyright rights and does not otherwise violate Defendants' alleged interests under 17 U.S.C. § 101 *et seq.*

84. Solely to the extent Defendants contend that Brave is secondarily liable for third-party use of Brave Search API outputs, Brave seeks a declaration that it is not contributorily, vicariously, or otherwise secondarily liable for copyright infringement, because Brave Search API has substantial non-infringing uses, Brave has not induced infringement, and Brave has not designed any challenged product to facilitate infringement.

85. The Court's resolution of this claim will serve a useful purpose in clarifying the legal relations at issue and will terminate all aspects of the controversy between the parties because the parties' dispute centers on whether Brave's accessing and using Defendants' content as described above is permitted under the law.

86. Under 17 U.S.C. § 505, Brave is entitled to recover its attorneys' fees and the full costs of this action.

18

## SECOND CLAIM FOR RELIEF

### (Declaratory Judgment of Copyright Misuse)

87. Brave repeats and realleges each and every allegation set forth above.

88. Defendants assert that Brave's browsing, indexing, and extraction of limited data from Defendants' websites (which Defendants characterize as "crawling" and "scraping") infringes Defendants' alleged copyright rights when used to index the webpages and operate a search engine, summarize content, and create snippets of content, as described above. Defendants also assert that providing RAG-essential search APIs is infringement.

89. Brave's actions are not infringement because they are protected fair use, as described above.

90. Nonetheless, Defendants are attempting to leverage their registered copyrights to prevent Brave from engaging in lawful fair use and to demand compensation for Brave's past use of "News Corp content" generally, including uses and materials that are not protected by copyright.

91. In doing so, Defendants are attempting to use their limited copyright interests to exert a monopoly over all uses of their copyright-protected works.

92. Defendants also are attempting to use their limited copyright interests to force Brave to pay for access to "News Corp content" generally, without regard to whether particular material is protectable by copyright.

93. Defendants' actions constitute copyright misuse: an attempt to monopolize the legitimate use of their publicly available works, contrary to public policy and the limited exclusive rights granted under 17 U.S.C. § 101 *et seq.* and the United States Constitution Art. I, § 8, cl. 8, as specifically limited by 17 U.S.C. § 102, which limits copyright protection to "original works of authorship fixed in any tangible medium of expression," and 17 U.S.C. § 107, which provides for fair use as a limitation on a copyright holder's exclusive rights.

94. An actual, present, and justiciable controversy exists between Brave and Defendants concerning Brave's fair use of Defendants' publicly available website content—namely whether Brave has infringed any copyright-protected works, and will continue to infringe these works, by

19

accessing, indexing, summarizing, and creating snippets of Defendants' publicly available websites as necessary to perform core search engine functions and offer search APIs.

95. Brave seeks a declaratory judgment that Defendants' threatened or purported enforcement of copyright rights constitutes misuse to the extent it seeks to control Brave's use of Defendants' non-copyrightable or non-exclusive material, and that such misuse defensively bars any infringement claim by Defendants based on the specifically identified products and conduct described above.

96. The Court's resolution of this claim will serve a useful purpose in clarifying the legal relations at issue and will terminate all aspects of the controversy between the parties because the parties' dispute centers on whether Brave's accessing and using Defendants' content as described above is permitted under the law.

97. Under 17 U.S.C. § 505, Brave is entitled to recover its attorneys' fees and the full costs of this action.

### THIRD CLAIM FOR RELIEF

### (Declaratory Judgment of No Breach of Contract – Terms of Service)

98. Brave repeats and realleges each and every allegation set forth above.

99. Defendants assert that Brave is "violating News Corp's terms of service" by "scrap[ing] News Corp websites without identifying itself and without authorization, and [by] includ[ing] the scraped copyrighted News Corp content into a search index that Brave licenses and sells to third parties." Defendants have not identified the specific URL, version, date, or provisions of the terms they contend apply to Brave's conduct.

100. The conduct Defendants complain of cannot amount to breach of contract because the alleged breach sounds in copyright law. Indeed, Defendants allege that the breach at issue is the unauthorized use and distribution of "copyrighted News Corp content."

101. As a result, Defendants' purported contract claims concern the subject matter and rights that fall within the scope of the federal Copyright Act.

102. Defendants' purported contract claims are, therefore, preempted by the Copyright Act.

103. Defendants' breach of contract allegations also fail because Defendants cannot show that Brave actually agreed to their terms of service, which are browse-wrap and click-wrap contracts of adhesion for which there was no contract formation.

104. An actual, present, and justiciable controversy exists between Brave and Defendants concerning whether Brave's access to and use of Defendants' publicly available website content in the specifically identified products and functions described above amounts to breach of any specific website terms Defendants contend apply to Brave's conduct, including any terms purporting to prohibit or restrict "scraping."

105. Brave seeks a declaratory judgment that its use of Defendants' publicly available website content as described above does not amount to breach of contract, including because (i) Brave did not agree to the specific website terms Defendants contend apply to Brave's conduct; and (ii) the terms are preempted by the federal Copyright Act under 17 U.S.C. § 301.

106. The Court's resolution of this claim will serve a useful purpose in clarifying the legal relations at issue and will terminate all aspects of the controversy between the parties because the parties' dispute centers on whether Brave's accessing and using Defendants' content as described above is permitted under the law.

## PRAYER FOR RELIEF

Brave respectfully requests that this Court enter judgment in its favor on each and every claim for relief set forth above and award it the following relief, including but not limited to:

a) A declaratory judgment that Brave's use of publicly available News Corp website content in search indexing, snippets, search summaries, and the Brave Search API, as specifically described in this Complaint, does not infringe Defendants' rights under the Copyright Act, 17 U.S.C. § 101 *et seq.*, and that Brave is not contributorily, vicariously, or otherwise secondarily liable for any third-party use of Brave Search API outputs to the extent Defendants assert such a theory;

21

b) A declaratory judgment that Defendants' threatened or purported enforcement of copyright rights constitutes copyright misuse to the extent it seeks to control Brave's use of Defendants' non-copyrightable or non-exclusive material, and that such misuse defensively bars any infringement claim by Defendants based on the specifically identified products and conduct described in this Complaint;

c) A declaratory judgment that Brave has not breached the website terms of each Defendant that Defendants contend apply to Brave's conduct, because Brave did not agree to those terms, and because any such terms are preempted to the extent they regulate rights equivalent to copyright rights in publicly available website content;

d) An order requiring Defendants to pay Brave's costs and attorneys' fees in this action pursuant to 17 U.S.C. § 505 and other applicable statutes and laws;

e) An award of any applicable pre-judgment and post-judgment interest according to law; and

f) Such other and further relief as the Court may deem appropriate, including without limitation all remedies provided for under any other applicable laws.

**<u>JURY DEMAND</u>**

Brave respectfully demands a jury trial pursuant to Fed. R. Civ. P. 38 on all issues so triable.

Dated: May 19, 2026

Respectfully submitted,

By: */s/ Ishika Desai*

GARY A. BORNSTEIN (*pro hac vice* forthcoming)
*gbornstein@cravath.com*
**CRAVATH, SWAINE & MOORE LLP**
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
Tel.: +1 212 474 1000

22

ROBERT D. CARROLL (*pro hac vice* forthcoming)
*RCarroll@goodwinlaw.com*
**GOODWIN PROCTER LLP**
100 Northern Avenue
Boston, MA 02210
Tel.: +1 617 570 1000

ISHIKA DESAI (SBN 340239)
*IDesai@goodwinlaw.com*
**GOODWIN PROCTER LLP**
525 Market Street
San Francisco, CA 94105
Tel.: +1 415 733 6316

Attorneys for Plaintiff
BRAVE SOFTWARE, INC.

BRAVE'S COMPLAINT FOR DECLARATORY JUDGMENT OF NON-INFRINGEMENT, COPYRIGHT MISUSE, AND NO BREACH OF CONTRACT         CASE NO.