Mark Conrad (SBN 255667)
mconrad@conmetkane.com
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000

*Counsel for Brave Software, Inc.*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**OAKLAND DIVISION**

BRAVE SOFTWARE, INC.,

*Plaintiff-Counter-defendant,*

v.

NEWS CORPORATION d/b/a NEWS CORP, DOW JONES & CO., INC., NYP HOLDINGS, INC.,

*Defendants-Counter-claimants*,

NEWS CORP UK & IRELAND LIMITED, NEWS PTY LIMITED d/b/a NEWS CORP AUSTRALIA,

*Defendants.*

Case No. 4:26-cv-04758-JST

**BRAVE SOFTWARE, INC.'S OPPOSITION TO DEFENDANTS NEWS CORP UK & IRELAND LIMITED AND NEWS PTY LIMITED'S MOTION TO DISMISS**

Hearing Date: November 5, 2026
Time: 2:00 p.m.
Judge: Hon. Jon S. Tigar

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. RELEVANT BACKGROUND ........ 4

III. ARGUMENT ........ 6

A. THE FOREIGN DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS BRAVE'S COPYRIGHT-RELATED CLAIMS FAILS ........ 6

B. THE FOREIGN DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS BRAVE'S COPYRIGHT-RELATED CLAIMS FAILS ........ 12

C. THE FOREIGN DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS BRAVE'S NON-BREACH OF CONTRACT CLAIM FAILS. ........ 14

IV. CONCLUSION ........ 15

**TABLE OF AUTHORITIES**


**Cases** **Page(s)**

*Application Sci. & Tech., LLC v. Statmon Techs. Corp.*,
2006 WL 1430215 (N.D. Ill. Apr. 21, 2006) ....15

*Arroyo v. Rosas*,
19 F.4th 1202 (9th Cir. 2021) ....15

*Chesebrough-Pond's, Inc. v. Faberge, Inc.*,
666 F.2d 393 (9th Cir. 1982) ....8

*Coheso, Inc. v. Can't Live Without It, LLC*,
2017 WL 10434396 (N.D. Cal. Dec. 18, 2017) ....8

*Creative Dream Prods., LLC v. Houston*,
2015 WL 12731915 (C.D. Cal. Apr. 2, 2015) ....13

*DePuy Synthes Sales, Inc. v. Stryker Corp.*,
2020 WL 6205702 (C.D. Cal. Sept. 29, 2020) ....14

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
896 F.2d 1542 (9th Cir. 1989) ....3, 7

*Karasek v. Regents of Univ. of Cal.*,
956 F.3d 1093 (9th Cir. 2020) ....13

*Leite v. Crane Co.*,
749 F.3d 1117 (9th Cir. 2014) ....7

*Mangindin v. Wash. Mut. Bank*,
637 F. Supp. 2d 700 (N.D. Cal. 2009) ....12

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
312 U.S. 270 (1941) ....6

*MedImmune, Inc. v. Genentech, Inc.*,
549 U.S. 118 (2007) ....6, 8, 9

*Microsoft Corp. v. MediaPointe, Inc.*,
626 F. Supp. 3d 1129 (C.D. Cal. 2022) ....9

*Mockingbird Found., Inc. v. Quang-Tuan Luong*,
2020 WL 858099 (N.D. Cal. Feb. 20, 2020) ....11

*Ningbo Yituo Enter. Mgmt. Co. v. GoPlus Corp.*,
2025 WL 2995105 (C.D. Cal. Oct. 9, 2025) ....11

*Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*,
556 F.3d 1294 (Fed. Cir. 2009) ....11

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
2020 WL 5797827 (S.D. Cal. Sept. 29, 2020) ....................3, 7, 10

*San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*,
65 F.4th 1012 (9th Cir. 2023)....................6, 7, 9, 14

*Shloss v. Sweeney*,
515 F. Supp. 2d 1068 (N.D. Cal. 2007) ....................10, 11

*Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*,
655 F.2d 938 (9th Cir. 1981)....................6

*U-Haul Int'l Inc. v. Pub. Storage Operating Co.*,
2025 WL 2531546 (D. Ariz. Sept. 3, 2025)....................8

*United States v. Jackson*,
24 F.4th 1301 (9th Cir. 2022)....................14

*United States v. Schlenker*,
21 F.4th 1205 (9th Cir. 2022)....................14

**Statutes**

Fed. R. Civ. P. 12(b)(1)....................7, 13

Fed. R. Civ. P. 12(b)(6).................... 3, 7, 12, 13

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

This motion is about two media companies that threatened to sue Plaintiff Brave Software, Inc. ("Brave") and now want to pretend they did not. In February 2025, Brave received a cease-and-desist letter (the "Letter") on behalf of five News Corp entities, including the two moving parties. These companies told Brave they were prepared to sue it over allegations of copyright infringement and breach of contract. Taking them at their word, Brave filed an action for declaratory judgment, seeking judicial confirmation of the lawfulness of its conduct. Having threatened suit and been sued in response, Defendants News Corp UK & Ireland Limited and News Pty Limited d/b/a News Corp Australia (the "Foreign Defendants") now contend they pose no legal threat to Brave. Although they make vague assurances in their moving papers about not owning the copyrights and websites "at issue" (a term they do not define), they have carefully avoided promising that they will not sue Brave in the future for the activities they complained of in their Letter. Thus, Brave had and continues to have a reasonable apprehension of being sued by the Foreign Defendants, and can therefore maintain this declaratory judgment action against them.

Brave is one of only three U.S. companies (alongside Google and Microsoft) that operates a fully independent search engine. (Dkt. No. 1 ("Compl.") ¶ 2.) Brave is able to generate its own search results without relying on third parties because it has invested heavily in building a comprehensive "search index"—a database of web content that has been collected, analyzed, and indexed to facilitate the retrieval of relevant information in response to user queries. (*Id.* ¶ 27.) Like any company that generates its own search results, Brave built its index by "crawling" (*i.e.*, searching and accessing via automated means) publicly available web content. (*Id.* ¶¶ 27, 37.) Brave facilitates access to this web content both directly, through its general search engine, Brave Search, and indirectly, by making its search results available via the Brave Search API to other search engines or generative artificial intelligence ("GenAI") companies that rely on Brave's results to improve their own responses to user queries. (*Id.* ¶¶ 46-47.)

On February 27, 2025, Brave received the cease-and-desist Letter from counsel for ***all*** Defendants. (*Id.* Ex. A.) The Letter began by identifying the Foreign Defendants among the complaining parties: "This firm represents News Corp, including its subsidiaries Dow Jones, ***News UK [sic]***, ***News Corp Australia***, and the New York Post (collectively 'News Corp')." (*Id.* at 1 (emphasis added).) Having defined "News Corp" to include the Foreign Defendants, the Letter made a variety of assertions about "News Corp's copyrighted content" and "News Corp websites." (*Id.*) For example, the Letter accused Brave of misappropriating "News Corp's copyrighted content" and of scraping "News Corp websites" in alleged violation of "News Corp's terms of service." (*Id.*) The Letter demanded "on behalf of News Corp" that Brave cease and desist from the challenged actions and asserted that "News Corp" was prepared to litigate. (*Id*. at 1, 3.)

The Letter did not identify any specific content or websites owned by any of the Defendants, foreign or domestic. Instead, "on behalf of News Corp"—defined to include the two Foreign Defendants—the Letter demanded that Brave cease and desist from the challenged actions with respect to "News Corp's copyrighted content" and "News Corp websites" writ large. (*Id.* at 1.) The Letter did not distinguish the Foreign Defendants' content and websites from those of the remaining Defendants in any way.

In their motion to dismiss (Dkt. No. 24 ("Mot.")), the Foreign Defendants now claim, for the first time, and contrary to their participation in the cease-and-desist Letter, that they "do not own—and hold no exclusive rights under—any of the copyrighted works at issue in this case" and do not "own or operate the websites referenced in the" Letter. (Dkt. No. 24-1 ("Decl.") ¶¶ 6, 8.) This effort to obtain dismissal by walking back their express threat to sue Brave fails.

The Foreign Defendants' carefully cabined statements cannot be squared with the their prior threats. While the Foreign Defendants now disclaim exclusive rights in the copyrighted works "at issue in this case" (Mot. at 1), the Letter was not limited to any specific copyrighted works. Likewise, while the Foreign Defendants now disclaim ownership of the websites "referenced" in the Letter (*id*. at 2), that Letter does not reference any specific websites. In other words, the Foreign Defendants have *not* disclaimed the ability to sue Brave on *any* copyrighted

content or websites, but only on the undefined set of content and websites they unilaterally, arbitrarily, and belatedly now deem to be "at issue" or "referenced"—all while continuing to decline to identify which content and websites are implicated by the Letter and which are not. This deficiency pervades all three of the Foreign Defendants' arguments for dismissal. On that basis, together with the other reasons set forth below, the Motion should be denied.

*First*, Brave has standing to bring (and thus this Court has subject matter jurisdiction over) its declaratory relief claims for copyright non-infringement and copyright misuse. A plaintiff has Article III standing to seek a declaratory judgment for copyright non-infringement if the alleged copyright holder's actions have created a "real and reasonable apprehension" of suit. *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1556 (9th Cir. 1989). The Foreign Defendants' actions—including sending a cease-and-desist Letter accusing Brave of misappropriating their copyrighted works and threatening litigation—created such an apprehension. The Foreign Defendants' incomplete disclaimer of ownership or other exclusive rights, made for the first time in their Motion, neither undoes their threat nor assures Brave of freedom from future suit. Moreover, the Foreign Defendants' limited covenant not to sue does not moot this action because it does not cover future conduct (*id*. at 3), and thus does not satisfy the Foreign Defendants' "formidable burden" of establishing that they cannot resume their threats in the future, *San Diego County Credit Union v. Citizens Equity First Credit Union*, 2020 WL 5797827, at *4-5 (S.D. Cal. Sept. 29, 2020).

*Second*, the Complaint adequately states claims for declaratory relief for copyright non-infringement and copyright misuse. Contrary to the Foreign Defendants' Rule 12(b)(6) argument, Brave was not required to allege affirmatively that the Foreign Defendants own or have exclusive rights in copyrighted works on which they could sue Brave. Instead, Brave's burden at the pleading stage is to allege facts sufficient to demonstrate that it plausibly had a reasonable apprehension of such suit. Brave's Complaint refers to and incorporates the Letter in which the Foreign Defendants made an explicit threat to bring such claims, thereby representing that they had the necessary ownership or other exclusive rights to do so. That plainly satisfies Brave's burden to state a claim.

*Third*, Brave has standing to bring (and this Court has subject matter jurisdiction over) Brave's declaratory relief claim for non-breach of contract, for similar reasons as pertain to its copyright-related claims. The Foreign Defendants' assertions in the Letter that Brave accessed their alleged copyrighted works in violation of their website terms of service, and their threats to sue Brave if it did not cease and desist, created a reasonable apprehension that the Foreign Defendants would sue Brave for breach of contract. (Compl. Ex. A, at 1-2.) And again, the Foreign Defendants' belated disclaimer of rights regarding unspecified websites purportedly "referenced" in the Letter is incomplete and ineffective, still leaving Brave in reasonable apprehension of suit. (Mot. at 2.) Further, their promise not to sue Brave for any *prior* acts described in the Letter did not and cannot remove Brave's apprehension of liability because the Foreign Defendants expressly retained the right to sue for *future* acts. (Decl. ¶ 9.)

It is also appropriate for this Court to exercise supplemental jurisdiction over the contract-related declaratory judgment claim, because the Letter threatened action against Brave for both copyright infringement and "violating News Corp's terms of service" in doing so. (Compl. Ex. A, at 1.) For that reason, Brave's claim for non-breach of contract concerns the same facts and same controversy as its claims for non-infringement of copyright and copyright misuse. And even if the federal claims are dismissed as against the Foreign Defendants, the claims brought by and against the domestic Defendants will continue in this Court.

## II. RELEVANT BACKGROUND

Brave operates a search engine called Brave Search. (Compl. ¶ 2.) Brave is one of only three U.S. companies (the other two being Google and Microsoft) that has built a search index capable of generating all of its own search results. (*Id.*) In addition to producing search results for users who access Brave Search directly, Brave syndicates its search results for use by third parties through its Brave Search API. (*Id.*) Those third parties include GenAI companies that use Brave's real-time search results to supplement the knowledge base from which their products generate answers to user queries. (*Id.*)

News Corporation d/b/a News Corp, Dow Jones & Co., Inc., and NYP Holdings, Inc. (collectively, the "Domestic Defendants"), and the Foreign Defendants, are a group of related

publishing companies. (*Id.* ¶ 3.) Both of the Foreign Defendants are wholly owned subsidiaries of News Corp. (*Id.* ¶¶ 15-16.) Both own and operate websites through which they publish news and other content for public consumption, including by U.S.-based subscribers. (*Id.* ¶ 23).

On February 27, 2025, counsel for all Defendants sent the cease-and-desist Letter to Brave. (*Id.* ¶ 19.) The Letter stated that it was sent on behalf of "News Corp, including its subsidiaries Dow Jones, News UK, News Corp Australia, and the New York Post" and defined all of these entities collectively as "News Corp." (*Id.* Ex. A, at 1.) In the Letter, "News Corp" (meaning both the Domestic Defendants and the Foreign Defendants) accused Brave of "unauthorizedly and unlawfully misappropriating News Corp's copyrighted content" and demanded that Brave "cease and desist" and pay "compensation for all past unauthorized use and sale by Brave of News Corp's copyrighted content." (*Id.*) All parties to the Letter also alleged that Brave had violated "News Corp's terms of service" by "scrap[ing] News Corp websites." (*Id.*) The Letter expressly stated that "News Corp" (again, defined to include the Foreign Defendants) "is also prepared to litigate in court to protect its rightful copyright interests." (*Id.* at 3.) The Letter did not identify the specific copyrights that Brave allegedly infringed or the specific websites that Brave allegedly scraped in violation of "News Corp's" terms of service. (Compl. ¶ 99.) By its own terms, the Letter covered *all* content obtained from *all* "News Corp" websites included in Brave's search index.

The cease-and-desist Letter created a reasonable apprehension by Brave that the Defendants (including the Foreign Defendants) would seek to hold Brave liable for copyright infringement and/or breach of contract. Thus, on March 12, 2025, Brave filed a declaratory judgment action seeking a declaration that: (i) Brave's conduct, as alleged in the Letter, did not infringe upon any copyrighted works of Defendants; (ii) Defendants engaged in copyright misuse in sending the Letter; and (iii) Brave did not infringe on Defendants' website terms of service in building its search index. (*Id.* ¶ 70.) All parties stipulated to dismiss the March 2025 complaint without prejudice in June 2025 to explore a potential amicable resolution. (*Id.* ¶¶ 70-73.) When negotiations later reached an impasse, Brave filed this action on May 19, 2026.

On July 14, 2026, after this action was filed, the Foreign Defendants represented "that they and their related local affiliates in the newspaper publishing business will not commence, maintain or participate in and will release any claim, action, lawsuit or proceeding, whether in law or equity, against [Brave] in any jurisdiction in connection with any of the activities described in the [Letter] arising prior to the date of this covenant not to sue and release." (Decl. ¶ 9.) The covenant did not address the Foreign Defendants' right to bring such claims against Brave in the future. When Brave pointed out this deficiency, instead of extending the covenant to cover such future conduct, the Foreign Defendants offered only to "be subject to the outcome of the litigation in the United States." (*Id.* ¶ 10.) At no point during these discussions did the Foreign Defendants contend that the Letter did not cover copyrighted works or websites in which they had ownership interests or other exclusive rights.

## III. ARGUMENT

### A. THE FOREIGN DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS BRAVE'S COPYRIGHT-RELATED CLAIMS FAILS

#### 1. Legal Standard

The Declaratory Judgment Act was adopted to provide parties legal relief from the "coercion" that occurs when the threat of suit "put[s] the challenger to the choice between abandoning his rights or risking prosecution." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007). If one party threatens another with suit, the threatened party may itself sue for declaratory relief rather than be forced to avoid litigation by halting its "course of conduct." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 65 F.4th 1012, 1023 (9th Cir. 2023); *see also Societe de Conditionnement en Aluminum v. Hunter Eng'g Co.*, 655 F.2d 938, 945 (9th Cir. 1981) (allowing suit for declaratory judgment where plaintiff was "subject to liability if it continue[d] to manufacture its product"). A plaintiff has Article III standing to bring a declaratory judgment action if, under "the facts alleged, under all the circumstances . . . there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality." *MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

In the context of a declaratory relief claim for copyright non-infringement, the Ninth Circuit applies the "reasonable apprehension" test to determine whether such a controversy exists. *See Hal Roach Studios, Inc.*, 896 F.2d at 1555-56; *San Diego Cnty.*, 65 F.4th at 1023-24. Under that test, "a plaintiff has standing to seek declaratory relief of non-infringement if he demonstrates a real and reasonable apprehension that he will be subject to liability if he continues with his course of conduct." *San Diego Cnty.*, 65 F.4th at 1023 (internal quotations omitted). The "reasonable apprehension test is oriented to the reasonable perceptions of the plaintiff, based on all the circumstances known to it." *Id.* at 1027 (quotations omitted).

A defendant may bring either a facial or a factual challenge to subject matter jurisdiction under Rule 12(b)(1). *See Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). "The district court resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* By contrast, a factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Id.* To successfully challenge subject matter jurisdiction in an action for declaratory relief, the defendant bears the burden of affirmatively "dispelling [Plaintiff's] fear" and "reasonable apprehension of suit as a matter of law." *San Diego Cnty.*, 65 F.4th at 1030. Simply withdrawing the threat is insufficient to remove a reasonable apprehension of suit. *See San Diego Cnty.*, 2020 WL 5797827, at *4 (a trademark holder that canceled the at-issue trademark but did not stipulate to non-infringement had not met its "formidable burden" of mooting action for declaratory judgment). "[I]f the existence of jurisdiction turns on disputed factual issues, the district court may resolve those factual disputes itself." *Leite*, 749 F.3d at 1121-22.

### 2. Brave Has Demonstrated a Reasonable Apprehension of a Copyright Infringement Suit by the Foreign Defendants

Brave has established Article III standing to pursue its copyright-related declaratory judgment claims against the Foreign Defendants, such that the Court has subject matter jurisdiction over those claims. Given "the facts alleged, under all the circumstances" pleaded in the Complaint, the Foreign Defendants' actions created a reasonable apprehension that they

would bring a copyright infringement suit against Brave. *MedImmune*, 549 U.S. at 127. To begin, the Foreign Defendants expressly threatened to bring such a suit. Their effort to withdraw the threat is too little, too late. Although the Foreign Defendants now disclaim ownership or other exclusive rights in some undescribed set of copyrighted works they deem to be "at issue" in the Letter (Mot. at 4 (citing Decl. ¶ 6)), they do not assert that there are *no* copyrighted works on which they could sue Brave. Nor do they deny that, as journalistic entities in the business of creating copyrighted works, the Foreign Defendants will continue to create such works going forward. Further, their post-Complaint covenant not to sue—limited to past conduct—does not relieve Brave's reasonable apprehension of future litigation.

*First*, the Foreign Defendants' facial challenge to subject matter jurisdiction fails because the allegations in the Complaint establish a reasonable apprehension of suit by Foreign Defendants against Brave. Brave alleges that "[c]ounsel for the Defendants sent a letter alleging infringement by Brave on behalf of ***each*** of the foregoing News Corp affiliates, naming ***each individually*** in the letter" (Compl. ¶ 17 (emphases added)), and that the Letter, sent by "***each*** of the Defendants," "threatened litigation and alleged that Brave infringed Defendants' copyrights" (*id.* ¶ 49 (emphasis added)). The Letter also expressly stated that the "News Corp" Defendants (which the Letter defined to include the Foreign Defendants) "demand[ed] compensation" and were "prepared to litigate in court." (*Id.* ¶¶ 55-56; *id.* Ex. A, at 1, 4.) Brave further alleges that the cease-and-desist Letter prompted it to take steps to minimize the risk of future liability; and that, despite Brave's efforts, "Defendants"—including the Foreign Defendants—"continue to assert that Brave is liable for copyright infringement and breach of contract and to demand payment, creating an imminent threat to Brave." (*Id.* ¶ 20.) Such allegations are sufficient to state a claim for declaratory judgment for noninfringement of intellectual property. *See, e.g.*, *U-Haul Int'l Inc. v. Pub. Storage Operating Co.*, 2025 WL 2531546, at *7 (D. Ariz. Sept. 3, 2025) ("Cease-and-desist letters are a common starting point for declaratory judgment actions."); *Chesebrough-Pond's, Inc. v. Faberge, Inc.*, 666 F.2d 393, 396-97 (9th Cir. 1982) (holding it was "reasonable to infer" a "threat of an infringement action" based on a letter laying out a *prima facie* case for trademark infringement); *Coheso, Inc. v. Can't Live Without It, LLC*, 2017 WL

10434396, at *5 (N.D. Cal. Dec. 18, 2017) (finding a reasonable apprehension of suit due to a cease-and-desist letter that implicitly threatened litigation).

The Foreign Defendants ignore these allegations and formalistically contend that dismissal is appropriate because the Complaint does not expressly allege that the Foreign Defendants hold exclusive rights in copyrighted works that could be asserted against Brave. (Mot. at 4.) This is a red herring. Brave's burden at this stage is limited to pleading facts sufficient to show it has a reasonable apprehension of suit based on the Foreign Defendants' conduct and representations, and may therefore seek declaratory judgment. *San Diego Cnty.*, 65 F.4th at 1023. Based on the Foreign Defendants' statements in the cease-and-desist Letter, Brave had and continues to have a reasonable basis to believe that the Foreign Defendants would, and still could, assert copyright infringement claims against it. Brave does not have an affirmative obligation to go the extra step and allege that the Foreign Defendants' threats to Brave have merit.[1] Quite the opposite; Brave is maintaining this action to obtain a final and binding declaration that Foreign Defendants ***cannot*** make good on their threats. That is the exact purpose of a declaratory judgment action. *See MedImmune*, 549 U.S. at 129 (explaining that the "very purpose of the Declaratory Judgment Act [is] to ameliorate" the "dilemma posed by that coercion—putting the challenger to the choice between abandoning his rights or risking prosecution").

*Second*, having represented to Brave that they own valid copyrights and having accused Brave of infringing those rights, the Foreign Defendants now seek to lodge a factual challenge to Brave's standing by declaring the opposite. This fares no better. The fact remains that the Foreign Defendants sent Brave a letter asserting that Brave was engaging in the unauthorized use and sale of their copyrighted content, demanding that Brave cease and desist, and threatening

[1] Foreign Defendants' reliance on *Microsoft Corp. v. MediaPointe, Inc.*, 626 F. Supp. 3d 1129 (C.D. Cal. 2022) is unavailing. The court there did not, as the Foreign Defendants imply (Mot. at 4), dismiss the plaintiff's declaratory judgment claim for failure to plead that the defendants owned the patent at issue. Instead, the court dismissed the complaint because the plaintiff had included affirmative allegations of *non*-ownership that the court was required to assume as true for purposes of ruling on defendants' motion. Thus, the complaint itself presented "internal inconsistencies" and "create[d] doubt about Defendants' chain of title." *Id.* at 1134-35. No such inconsistencies exist here.

litigation. (Compl. Ex. A, at 1-2.) Only when Brave challenged their assertions by filing this action did the Foreign Defendants backtrack and claim that they do not "own or hold exclusive rights in any works referenced in the [Letter]." (Decl. ¶ 6.) The Foreign Defendants offer no explanation for this change in position. Nor do they explain why they participated, by name, in the cease-and-desist Letter if they held no relevant interest in copyrights they could assert against Brave. (Compl. Ex. A, at 1.)

Regardless, even now, the Foreign Defendants have not fully retracted their threat to sue. They cryptically (but repeatedly and obviously intentionally) disclaim ownership or other exclusive rights *only* over what they call the copyrighted content "at issue" or "referenced" in the cease-and-desist Letter. (*E.g.*, Mot. at 4, 5, 6; Decl. ¶¶ 6, 7.) Because there are no copyrighted works identified in the Letter, the breadth of this caveat is unclear. What is undeniable, however, is that the Foreign Defendants have given only a limited disclaimer. They do not disavow ***in full*** any ownership or other exclusive rights over ***any*** copyrighted works that they could try to assert against Brave for the conduct described in the Letter.[2] Moreover, the Foreign Defendants say nothing to relieve Brave's reasonable apprehension of suit in the future. The Foreign Defendants have not dispelled the specter of litigation that they created by sending the Letter.

*Third*, the Foreign Defendants' covenant not to sue did not "moot" the case for purposes of Article III standing. A defendant asserting that a controversy has been mooted through such a covenant bears "the formidable burden" to show that the threat of suit "could not reasonably be expected to recur." *San Diego Cnty.*, 2020 WL 5797827, at *4-5. The Foreign Defendants have not met that burden here. The covenant extends only to Brave's actions ***prior*** to July 14, 2026, when the covenant was given. (*See* Decl. ¶ 9.) The Foreign Defendants retained the right to bring the same claims against Brave going forward. (*Id.* ¶ 10.) This glaring deficiency in the Foreign Defendants' covenant is fatal to their argument. *See, e.g.*, *Shloss v. Sweeney*, 515 F.

[2] In a single spot in the Motion, the Foreign Defendants break from their typical formulation and state more broadly that they "do not own, exclusively license, or otherwise hold any exclusive rights in any works" (Mot. at 3 (citing Decl. ¶ 6)), but the supporting declaration is narrower, and conforms to the rest of the Motion, stating only that Foreign Defendants do not "own or hold exclusive rights in any works *referenced in the Letter*" (Decl. ¶ 6 (emphasis added)).

Supp. 2d 1068, 1078 (N.D. Cal. 2007) (rejecting a similar argument where "if the Court dismissed this action, Defendants could sue Plaintiff on the first day on which her website in its current form was made available to the public, notwithstanding their covenant not to sue"); *Mockingbird Found. Inc. v. Quang-Tuan Luong*, 2020 WL 858099, at *5 (N.D. Cal. Feb. 20, 2020) (denying mootness argument because it was not "absolutely clear" that the purported copyright holder and his counsel would "not dig up another purported instance of copyright infringement and repeat a similar series of demands"); *see also Revolution Eyewear, Inc. v. Aspex Eyewear, Inc.*, 556 F.3d 1294, 1300 (Fed. Cir. 2009) (declaratory judgment action for non-infringement was not moot where the patent holder "stat[ed] that it is not obligated to repudiate suit for future infringement") (quotation marks omitted).[3]

Indeed, the Foreign Defendants' unwillingness to extend their covenant to future conduct is telling. If they truly do not own, or plan to create, copyrights to works on which they might sue Brave for the conduct described in the Letter, then expanding the covenant to future conduct would be costless. Their reluctance to do so only underscores that there is still a live controversy between the parties and that "dismissal of the suit would leave [Brave] with the 'Damoclean threat' of litigation hanging over its head." *Shloss*, 515 F. Supp. 2d at 1077 (citation omitted).

### 3. Discretionary Factors Favor the Court's Exercise of Subject Matter Jurisdiction Over Brave's Claims Against the Foreign Defendants

The Foreign Defendants argue that, even if this Court has subject matter jurisdiction over Brave's copyright-related claims against them (which it does), the Court should decline to exercise that jurisdiction because "[t]he parties' actual dispute lies with the [D]omestic Defendants" and "[c]omplete relief, if warranted, is available to Brave" from them. (Mot. at 6.) This argument assumes what the Foreign Defendants have failed to prove at this juncture: that Brave has no reasonable apprehension of suit by the Foreign Defendants. If Brave has such an

---

[3] The Foreign Defendants' citation to *Ningbo Yituo Enter. Mgmt. Co. v. GoPlus Corp.*, 2025 WL 2995105 (C.D. Cal. Oct. 9, 2025), proves the point. In *Ningbo*, the covenant at issue "cover[ed] not just current and/or previous products, but also any colorable imitations," and thus was of such "breadth" that the plaintiff "could not reasonably expect any future injury to occur." *Id.* at *7-8. That broad covenant, which covered ongoing and future infringement, stands in stark contrast to the limited, retrospective covenant that the Foreign Defendants offered here.

apprehension (and it does), a declaration against only the Domestic Defendants pertaining only to the Domestic Defendants' copyrighted works would not afford Brave complete relief. The Foreign Defendants' cited authority is therefore inapposite, because Brave's claim against the Foreign Defendants is not "entirely commensurate with the relief sought through" the claims against the Domestic Defendants, so it is not "duplicative and unnecessary." *Cf. Mangindin v. Wash. Mut. Bank*, 637 F. Supp. 2d 700, 707-08 (N.D. Cal. 2009) (cited at Mot. at 6).

The Foreign Defendants' argument that "requiring [them] to remain in the case would add needless complexity in the form of discovery and expense" (Mot. at 6) likewise fails. To the extent this is a problem, it is one of the Foreign Defendants' own making. The Foreign Defendants injected themselves into this dispute by authorizing their counsel to send the Letter on their behalf. In fact, keeping the Foreign Defendants in this action would promote a more efficient resolution of the parties' disputes. In pursuit of its copyright misuse claim, Brave intends to seek discovery from the Foreign Defendants concerning the scope and circumstances of the Letter, including discovery into the Foreign Defendants' ownership or other rights in copyrights on which they could sue Brave. Allowing the Foreign Defendants to try to evade party discovery by belatedly disclaiming their involvement in a dispute they voluntarily initiated—and forcing Brave to chase them overseas or through their parent—would undermine, not promote, efficient judicial administration. It would also be unfair to allow the Foreign Defendants to try to pressure Brave to pay compensation and enter into a license, but then disclaim responsibility and involvement when Brave calls the question.

In sum, there is nothing inequitable or inefficient about requiring the Foreign Defendants to participate in a lawsuit that they themselves threatened against Brave.

### B. THE FOREIGN DEFENDANTS' RULE 12(B)(6) MOTION TO DISMISS BRAVE'S COPYRIGHT-RELATED CLAIMS FAILS

The Foreign Defendants alternatively move to dismiss Brave's copyright-related claims pursuant to Rule 12(b)(6), arguing that "the Complaint pleads no facts plausibly establishing that [Foreign Defendants] are the legal or beneficial owner of any exclusive right in any work

at issue." (Mot. at 7.) This argument does not accurately describe the Complaint and, in any event, applies the wrong legal standard.

The Complaint alleges that the Foreign Defendants threatened to assert copyright claims against Brave, and it attaches the cease-and-desist Letter in which the Foreign Defendants made that threat. (*See* Compl. ¶ 49; *id.* Ex. A, at 3.) These factual allegations are sufficient to find that the Complaint pleads that the Foreign Defendants claimed to have sufficient rights in copyrighted works to assert against Brave. *Karasek v. Regents of Univ. of Cal.*, 956 F.3d 1093, 1104 (9th Cir. 2020) (on a Rule 12(b)(6) motion, the court "accept[s] as true all well-pleaded allegations of fact in the complaint and construe[s] them in the light most favorable to the non-moving party" (internal quotations omitted)). Whether the Foreign Defendants do, in fact, own the copyrighted content is a factual question that does not go to the sufficiency of the pleadings for purposes of the Motion. *Cf. Creative Dream Prods., LLC v. Houston*, 2015 WL 12731915, at *4 (C.D. Cal. Apr. 2, 2015) (denying motion to dismiss where the determination of ownership of a copyright was an issue of fact "ill-suited to resolution on a motion to dismiss").

Regardless, the Foreign Defendants again confuse the burden of proof here. As explained in Section III.A.2 above, Brave's burden as the party seeking declaratory relief is to allege facts that—if accepted as true—show that the Foreign Defendants' actions put Brave in reasonable apprehension of suit. (*See supra* Section III.A.2.) The Foreign Defendants do not cite any case where a declaratory relief claim for non-infringement was dismissed for failure to state a claim because the plaintiff did not affirmatively plead defendant's ownership of valid copyrights.[4] Holding Brave to that burden would not make sense, where Brave's claim is expressly premised on proving it is *not* infringing any copyrighted works of the Foreign Defendants. (*See supra* Section II.)

---

[4] Each of the cases the Foreign Defendants cite in support of their Rule 12(b)(6) argument involves a different procedural posture, either a motion to dismiss pursuant to Rule 12(b)(1) or a motion to dismiss a plaintiff's affirmative claim for copyright infringement. (*See* Mot. at 7-8.)

**C. THE FOREIGN DEFENDANTS' RULE 12(B)(1) MOTION TO DISMISS BRAVE'S NON-BREACH OF CONTRACT CLAIM FAILS.**

As with its copyright-related declaratory judgment claim, Brave has likewise established Article III standing to pursue its contract-related declaratory judgment claim against the Foreign Defendants, which seeks a declaration that Brave's activities in building its search index do not violate the Foreign Defendants' website terms of service.

The Foreign Defendants argue, as they did with respect to Brave's copyright-related claims, that Brave has not established Article III standing because "[t]he Complaint pleads no facts plausibly establishing any terms of service belonging to either" Foreign Defendant. (Mot. at 8.) Again, that is not Brave's burden. Brave's burden is to allege that there is an actual case and controversy that allows the Court to exercise jurisdiction. *See San Diego Cnty.*, 65 F.4th at 1030. This Circuit has applied the same "reasonable apprehension" test where a plaintiff seeks a declaration that it is not in breach of contract. *See United States v. Schlenker*, 24 F.4th 1301, 1305-06 (9th Cir. 2022) (concluding a defendant had standing to bring a declaratory action where he was in "reasonable apprehension" of prosecution for violating his plea agreement); *United States v. Jackson*, 21 F.4th 1205, 1213 (9th Cir. 2022) ("[A] plea agreement is, at bottom, a contract . . ."); *see also DePuy Synthes Sales, Inc. v. Stryker Corp.*, 2020 WL 6205702, at *5 (C.D. Cal. Sept. 29, 2020) (concluding that plaintiff had standing to bring a declaratory judgment action for non-breach of contract where defendant sent plaintiff a cease-and-desist letter and "appeared ready to enforce [the contract] in court").

Brave has met that burden here. Brave pleaded that the Foreign Defendants joined a letter accusing Brave of violating "News Corp's terms of service"—with "News Corp" explicitly defined to include the Foreign Defendants—and threatening legal action if those alleged violations continued. (Compl. Ex. A, at 1.) It was and is reasonable for Brave to believe that, should it engage in the conduct described in the cease-and-desist Letter, it may face breach of contract claims from the sponsors of that Letter, including the Foreign Defendants.

The Foreign Defendants seek to defeat Brave's contract-related claim for declaratory relief by asserting, for the first time, that they do not "own or operate the websites referenced in the Letter" (Decl. ¶ 8) and "do not plan to assert a breach of contract claim premised on Brave's

breach of the terms of service with respect to Foreign Defendants" (Mot. at 8). This fails for similar reasons as Foreign Defendants' motion to dismiss Brave's copyright-related claims: Having threatened to bring exactly such an action against Brave based on terms of service of websites operated by "News Corp" (defined in the Letter to include the Foreign Defendants), the Foreign Defendants cannot erase Brave's legitimate apprehension of liability by ***now*** representing that it did not mean what it said. *See Application Sci. & Tech., LLC v. Statmon Techs. Corp.*, 2006 WL 1430215, at *1 (N.D. Ill. Apr. 21, 2006) (explaining that "obviously" a party cannot "accuse another of infringement and prevent the alleged infringer from seeking redress" by later claiming the copyrights are unenforceable).

Further, the Foreign Defendants' disclaimer is once again incomplete. They address only the unnamed websites supposedly "referenced in" the cease-and-desist Letter; the Foreign Defendants ***do not*** disclaim ownership over ***any and all*** websites allegedly being scraped and indexed by Brave. Nor have the Foreign Defendants covenanted not to sue Brave for breach of those websites' terms of service should Brave continue to index those websites in the future. In short, and contrary to what is asserted in their Motion, the Foreign Defendants' limited disclaimer and covenant do not establish that Foreign Defendants "could not" try to assert a breach of contract claim against Brave (Mot. at 9) or that it will not attempt to do so in the future. And as described above in Section III.A.3, discretionary factors favor the exercise of jurisdiction here.[5]

## IV. CONCLUSION

For these reasons, Foreign Defendants' Motion should be denied in full.

[5] The Foreign Defendants argue that if Brave's declaratory judgment claims for copyright non-infringement and copyright misuse are dismissed, then the Court should decline to exercise supplemental jurisdiction over Brave's contract claim. (Mot. at 9.) Even if those claims were dismissed (which they should not be), this case will still proceed against the Domestic Defendants, so this Court should exercise supplemental jurisdiction over the contract-related claim, which "derive[s] from a common nucleus of operative fact" as the claims against the Domestic Defendants. *Arroyo v. Rosas*, 19 F.4th 1202, 1209 (9th Cir. 2021) (quotation omitted).

DATED: August 27, 2026

By: */s/ Gary A. Bornstein*
Gary A. Bornstein

Gary A. Bornstein (*pro hac vice*)
gbornstein@cravath.com
**CRAVATH, SWAINE & MOORE LLP**
375 Ninth Avenue
New York, New York 10001
Telephone: (212) 474-1000

Mark Conrad (SBN 255667)
mconrad@conmetkane.com
**CONRAD | METLITZKY | KANE LLP**
217 Leidesdorff Street
San Francisco, CA 94111
Telephone: (415) 343-7100

*Counsel for Brave Software, Inc.*